# SHULTS & TAMM, LLP
## A LIMITED LIABILITY LAW PARTNERSHIP

**LISSA D. SHULTS (JD 7910)**
E-MAIL: lshults@st-llp.com
**BRADLEY R. TAMM (JD 7841)**
E-MAIL: btamm@st-llp.com
**828 FORT STREET, STE 330**
**HONOLULU, HAWAI'I 96813**
TELEPHONE (808) 524-4949
FACSIMILE (808) 524-4844

Attorneys for Plaintiff
HAWAII DISABILITY RIGHTS CENTER

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAWAII DISABILITY RIGHTS CENTER, a Hawaii Corporation,<br><br>        Plaintiff,<br><br>v.<br><br>SUSANNA F. CHEUNG, in her capacity as President and Chief Executive Officer of Opportunities for the Retarded, Inc.,; and OPPORTUNITIES FOR THE RETARDED, INC., a Hawaii Corporation,<br><br>        Defendants. | Civil No. 06-00605 DAE-LEK<br><br>**PLAINTIFF HAWAII DISABILITY RIGHTS CENTER'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS; CERTIFICATE OF SERVICE**<br><br><br>Hearing:<br><br>DATE:   September 24, 2007<br>TIME:   9:00 a.m.<br>JUDGE:  Hon. David A. Ezra<br><br>NO TRIAL DATE SET |

**PLAINTIFF HAWAII DISABILITY RIGHTS CENTER'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (DOCKET #53)**

## TABLE OF CONTENTS

I.    STANDARD FOR RULING ON MOTION................................1

II.   ARGUMENT.....................................................2

      A.   This Court has jurisdiction over HDRC's claims
      pursuant to 28 U.S.C. section 1331.........................4

      B.   The fact that the DD Act is a funding statute is
      irrelevant to HDRC's claims...............................9

      C.   Congress created an express private right of action
      for state-designated P&As................................13

      D.   Congress created an implied private right of action
      for state-designated P&As................................18

      E.   Section 15044 provides further evidence of Congress's
      intent to create a private right of action for state-
      designated P&As..........................................21

      F.   The implementing regulation of the DD Act is
      enforceable..............................................23

      G.   This Court has jurisdiction over HDRC's state law
      breach of contract claim.................................26

III.  CONCLUSION..................................................27

## <u>TABLE OF AUTHORITIES</u>

*Advocacy Ctr. for Persons with Disabilities, Inc. v. Woodlands Estates Assoc., Inc.*, 192 F. Supp. 2d 1344 (M.D. Fla. 2002). 16

*Advocacy Inc. v. Tarrant County Hosp. Dist.*, 2001 WL 1297688 (N.D. Tex. 2001) .......................................... 21

*Advocacy, Inc. v. Brown Schools, Inc.,* 2001 WL 1910563 (W.D. Tex. 2001) ............................................... 6

*Alabama Disabilities Advocacy Program v. J.S. Tarwater Dev. Ctr.*, 97 F.3d 492 (11th Cir. 1996) .................. 5, 25, 26

*Alexander v. Sandoval*, 532 U.S. 275, 121 S. Ct. 1511, (2001).. 24

*Americopters, LLC v. F.A.A.*, 441 F.3d 726 (9th Cir. 2006) ...... 1

*Arakaki v. Lingle*, 477 F.3d 1048 (9th Cir. 2007) .............. 1

*Arbaugh v. Y&H Corp.*, 546 U.S. 500, 126 S. Ct. 1235 (2006) .... 27

*Ball v. Rodgers*, ___ F.3d ___, 2007 WL 2034043 (9th Cir. Jul. 17, 2007) ................................................. 11

*Center for Legal Advocacy v. Earnest*, 320 F.3d 1107 (10th Cir. 2003) ..................................................... 5

*Center for Legal Advocacy v. Hammons*, 323 F.3d 1262 (10th Cir. 2003) ..................................................... 5

*City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 125 S. Ct. 1453 (2005) .................................... 22, 23

*Connecticut Protection & Advocacy for Persons with Disabilities v. Hartford Board of Edu.*, 464 F.3d 229 (2d Cir. 2006) ....... 5

*Developmental Disabilities Advocacy Ctr., Inc. v. Melton*, 689 F.2d 281 (1st Cir. 1982) .................................... 5

*Disability Rights Wisc., Inc. v. State of Wisc. Dept. of Public Instruction*, 463 F.3d 719 (7th Cir. 2006) .................. 5

*Empire Healthchoice Assurance, Inc. V. McVeigh*, ___ U.S. ___, 126 S. Ct. 2121 (2006) .................................. 8, 9

*Equip for Equality, Inc. v. Ingalls Mem. Hosp.*, 329 F. Supp. 2d 982 (N.D. Ill. 2004) ...................................... 6

*Federation of African American Contractors v. City of Oakland,*
96 F.3d 1204 (9th Cir. 1996.................................... 3

*Georgia Advocacy Office v. Borison,* 238 Ga. App. 780, 520 S.E.2d
701 (Ga. Ct. App. 1999)...................................... 21

*Gieseking v. Schafer*, 672 F. Supp. 1249 (W.D. Mo. 1987)....... 13

*Gonzaga University v. Doe*, 536 U.S. 273, 122 S. Ct. 2268 (2002)
...................................................... 4, 22

*Grable & Sons Metal Prods. Inc. v. Darue Eng'g. Mfg.*, 545 U.S.
308, 125 S. Ct. 2363 (2005)................................ 7, 8

*Howe v. Ellenbecker*, 8 F.3d 1258 (8th Cir. 1993).............. 3

*Iowa Protection and Advocacy Servs., Inc. v. Tanager Place* , 404
F. Supp. 2d 1120 (N.D. Iowa 2005............................. 6

*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 125 S. Ct.
1497 (2005)................................................ 10

*Manley v. Horsham Clinic*, 2001 WL 894230 (E.D. Pa. 2001)...... 12

*Martin v. Voinovich*, 740 F. Supp. 1175 (S.D. Ohio 1993)....... 13

*Mihalcik v. Lensink*, 732 F. Supp. 299 (D. Conn. 1990)........ 13

*Mississippi Protection & Advocacy Sys., Inc. v. Cotton*, 929 F.2d
1054 (5th Cir. 1991)....................................... 20

*Mississippi Protection and Advocacy Sys., Inc. v. Cotton*, 929
F.2d 1054 (5th Cir. 1991).................................. 5

*Missouri Protection & Advocacy Servs. v. Missouri Dept. of
Mental Health*, 447 F.3d 1021 (8th Cir. 2006)................ 5

*Nicoletti v. Brown*, 740 F. Supp. 1268 (N.D. Ohio 1987)....... 13

*Ohio Legal Rights Serv. v. Buckeye Ranch, Inc.,* 365 F. Supp. 2d
877 (S.D. Ohio 2005)....................................... 16

*Orkin v. Taylor,* 487 F.3d 734 (9th Cir. 2007)................ 4

*Pennhurst State Sch. and Hosp. v. Halderman,* 451 U.S. 1, 101 S.
Ct. 1531 (1981)............................................ 12

*Pennsylvania Protection and Advocacy, Inc. v. Houstoun*, 1999 WL
1045152 (E.D. Pa. 1999).................................... 6

*Pennsylvania Protection and Advocacy, Inc. v. Houstoun*, 228 F.2d 423 (3d Cir. 2000)......................................... 5

*Protection & Advocacy for Persons with Disabilities v. Armstrong*, 266 F. Supp. 2d 303 (D. Conn. 2003)............... 6

*Protection & Advocacy for Persons with Disabilities v. Mental Health & Addiction Servs.*, 448 F.3d 119 (2d Cir. 2006)....... 5

*Risinger v. Concannon*, 117 F. Supp. 2d 61 (D. Me. 2000)... 16, 18

*Tennessee Protection & Advocacy, Imc. v. Wells*, 371 F.3d 342 (6th Cir. 2004).............................................. 5

*Virginia Office for Protection and Advocacy v. Reinhard*, 405 F.3d 185 (4th Cir. 2006)..................................... 5

*Warth v. Seldin*, 422 U.S. 490, 95 S. Ct. 2197 (1975)........... 2

*Wisconsin Coalition for Advocacy, Inc. v. Czaplewski*, 131 F. Supp. 2d 1039 (E.D. Wis. 2001)............................... 6

*Wisconsin Coalition for Advocacy, Inc. v. State of Wisc. Dept. of Public Instruction,* 407 F. Supp. 2d 988 (W.D. Wis. 2005).. 6

**Statutes**

28 U.S.C. § 1331......................................... 7, 12

29 U.S.C. § 794e............................................ 5

42 U.S.C. § 10805........................................... 5

42 U.S.C. § 15001(b)(2)..................................... 18

42 U.S.C. § 15041.......................................... 18

42 U.S.C. § 15043........................................... 5

42 U.S.C. § 15043(a)(1)................................. 15, 17

42 U.S.C. § 15043(a)(2)(A)(i)........................... 19, 23

42 U.S.C. § 15043(a)(2)(B)................................. 17

42 U.S.C. § 15043(a)(2)(H)................................. 18

42 U.S.C. § 15043(a)(2)(I)................................. 18

42 U.S.C. § 15043(a)(2)(I)(iii)............................. 30

42 U.S.C. § 15044(b)(1)...................................... 27

Haw. Rev. Stat. § 333F-8.5.................................. 9

**Regulations**

45 C.F.R. § 1386.21(c)...................................... 19

45 C.F.R. § 1386.22(i)................................... 29, 31

45 C.F.R. § 1386.25........................................ 19

## MEMORANDUM IN OPPOSITION

Plaintiff Hawaii Disability Rights Center (HDRC), by and though its counsel of record, hereby submits its memorandum in opposition to Defendants Susanna F. Cheung, in her capacity as President and Chief Executive Officer of Opportunities for the Retarded, Inc., and Opportunities for the Retarded, Inc.'s (ORI) Motion to Dismiss, filed July 18, 2007. (Docket # 53).

## I.   STANDARD FOR RULING ON MOTION

Defendants bring the instant motion pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and Rule 12(b)(6), for failure to state a claim. (Docket # 53 at 2).

"Standing is a legal issue subject to *de novo* review. In ruling on a FED. R. CIV. P. 12(b)(6) motion to dismiss for lack of standing, we must construe the complaint in favor of the complaining party." *Arakaki v. Lingle*, 477 F.3d 1048, 1056 (9th Cir. 2007) (citations omitted).

"[U]nlike a Rule 12(b)(6) motion, in a Rule 12(b)(1) motion, the district court is not confined by the facts contained in the four corners of the complaint-it may consider facts and need *not* assume the truthfulness of the complaint." *Americopters, LLC v. F.A.A.,* 441 F.3d 726, 732 n.4 (9th Cir. 2006) (citation omitted).

## II.  ARGUMENT

Defendants' motion is based entirely on its argument that the Developmental Disabilities Assistance and Bill of Rights Act (DD Act) does not provide HDRC with an implied private right of action.

A plaintiff's standing to assert a particular claim has both constitutional and prudential limits. Whether Congress provides any plaintiff with a right of action falls under prudential considerations:

> [T]he source of the plaintiff's claim to relief assumes critical importance with respect to the prudential rules of standing that, apart from Art. III's minimum requirements, serve to limit the role of the courts in resolving public disputes. <u>Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief</u>. . . . <u>Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules</u>. Of course, Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants.

*Warth v. Seldin*, 422 U.S. 490, 498-501, 95 S. Ct. 2197, 2205-06 (1975) (footnote and citations omitted) (emphases added).[1]

With regard to whether Congress abrogated prudential standing requirements, "'[t]he central inquiry [is] whether

---

[1] Defendants do not argue that HDRC lacks constitutional standing to bring the instant action. HDRC therefore does not address that issue, but requests the opportunity to brief it should the issue arise.

Congress intended to create, *either expressly or by implication,* a private cause of action.'" *Federation of African American Contractors v. City of Oakland,* 96 F.3d 1204, 1210-11 (9th Cir. 1996) (quoting *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S. Ct. 2479, 2489, 61 L. Ed. 2d 82 (1979)) (emphasis in original); *Howe v. Ellenbecker*, 8 F.3d 1258, 1261 (8th Cir. 1993) ("Because standing is determined by the specific claims presented, whether [the plaintiffs] have standing depends on whether the statute at issue . . . creates an express or implied right of action.").

In determining whether a federal statute creates a private right of action, congressional intent is the cornerstone of the analysis. The Supreme Court has established a four-factor test for discerning whether a statute creates a private right of action. *Cort v. Ash,* 422 U.S. 66, 95 S. Ct. 2080, 45 L. Ed. 2d 26 (1975). Under that test, we must ask: (1) whether the plaintiff is a member of a class that the statute especially intended to benefit, (2) whether the legislature explicitly or implicitly intended to create a private cause of action, (3) whether the general purpose of the statutory scheme would be served by creation of a private right of action, and (4) whether the cause of action is traditionally relegated to state law such that implication of a federal remedy would be inappropriate. 422 U.S. at 78, 95 S. Ct. 2080.

The most important inquiry under *Cort* is the second factor: whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one." Indeed, the three *Cort* questions that are not explicitly focused on legislative intent are actually indicia of legislative intent, such that the *Cort* test itself is focused entirely on intent. The four *Cort* factors,

thus, are merely targeted inquiries to guide our central project of discerning Congress's intent.

*Orkin v. Taylor,* 487 F.3d 734, 738-39 (9th Cir. 2007) (citations omitted) (emphases added).

"[E]ven where a statute is phrased in such explicit rights-creating terms, a plaintiff suing under an implied right of action still must show that the statute manifests an intent 'to create not just a private *right* but also a private *remedy*.'" *Gonzaga University v. Doe*, 536 U.S. 273, 284, 122 S. Ct. 2268, 2276 (2002) (quoting *Alexander v. Sandoval,* 532 U.S. 275, 286, 121 S. Ct. 1511 (2001)) (emphases in original).

For the following reasons, Defendants are wrong that this Court does not have jurisdiction over HDRC's claims and wrong that HDRC does not standing to bring those claims.

**A.   This Court has jurisdiction over HDRC's claims pursuant to 28 U.S.C. section 1331.**

As an initial matter, Defendants' argument that the Court does not have jurisdiction to determine HDRC's access authority pursuant to the DD Act, or pursuant to any of the other protection and advocacy acts,[2] flies in the face of the numerous cases wherein federal courts have determined that exact issue.[3]

---

[2] "The DD Act, the PAMII [Protection and Advocacy for Mentally Ill Individuals] Act and the PAIR [Protection and Advocacy of Individual Rights] Act establish separate but largely parallel regimes to serve particular populations of people with disabilities." *Disability Rights Wisc., Inc. v. State of Wisc.*

4

Moreover, contrary to Defendants' argument that "[t]he sole sources of federal court jurisdiction alleged in the complaint are a federal statute and regulations," (Docket # 54 at 11), HDRC alleges that this Court has jurisdiction over this action pursuant to, *inter alia*, 28 U.S.C. section 1331.

Several federal courts have expressly founded their jurisdiction to consider a P&A's access claim, brought pursuant to DD Act, PAMII, or PAIR, on 28 U.S.C. section 1331:[4]

---

*Dept. of Public Instruction*, 463 F.3d 719, 724 (7th Cir. 2006). These three Acts include similar provisions regarding a P&A's access authority and right to pursue legal remedies. *See* 29 U.S.C. § 794e; 42 U.S.C. § 15043; 42 U.S.C. § 10805.

[3] *See Developmental Disabilities Advocacy Ctr., Inc. v. Melton*, 689 F.2d 281 (1st Cir. 1982); *Prot. & Advocacy for Persons with Disabilities v. Mental Health & Addiction Servs.,* 448 F.3d 119 (2d Cir. 2006); *Connecticut Prot. & Advocacy for Persons with Disabilities v. Hartford Board of Edu.*, 464 F.3d 229 (2d Cir. 2006); *Pennsylvania Prot. & Advocacy, Inc. v. Houstoun*, 228 F.2d 423 (3d Cir. 2000); *Virginia Office for Prot. & Advocacy v. Reinhard*, 405 F.3d 185 (4th Cir. 2006); *Mississippi Prot. & Advocacy Sys., Inc. v. Cotton*, 929 F.2d 1054 (5th Cir. 1991); *Tennessee Prot. & Advocacy, Inc. v. Wells*, 371 F.3d 342 (6th Cir. 2004); *Disability Rights Wisc. v. Wisconsin Dept. of Public Instruction*, 463 F.3d 719 (7th Cir. 2006); *Missouri Prot. & Advocacy Servs. v. Missouri Dept. of Mental Health*, 447 F.3d 1021 (8th Cir. 2006); *Center for Legal Advocacy v. Earnest*, 320 F.3d 1107 (10th Cir. 2003); *Center for Legal Advocacy v. Hammons*, 323 F.3d 1262 (10th Cir. 2003); *Alabama Disabilities Advocacy Program v. J.S. Tarwater Dev. Ctr.*, 97 F.3d 492 (11th Cir. 1996).

These are only some of the **circuit court** cases that have addressed a P&A's access authority under the DD Act, PAMII, and PAIR.

[4] "The district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States." 28 U.S.C. § 1331.

> [T]his court does have jurisdiction to hear this
> action pursuant to the provisions of 28 U.S.C. § 1331
> . . . precisely because this action does arise under
> the Development Disabilities Assistance and Bill of
> Rights Act, as amended, 42 U.S.C. § 6001 and the
> Protection and Advocacy for Individuals with Mental
> Illness Act of 1986, as amended, 42 U.S.C. § 10801, *et
> seq.*

*Wisconsin Coalition for Advocacy, Inc. v. Czaplewski*, 131 F. Supp. 2d 1039, 1049 (E.D. Wis. 2001) (emphasis added)[5]; *see also Equip for Equality, Inc. v. Ingalls Mem. Hosp.*, 329 F. Supp. 2d 982, 985 (N.D. Ill. 2004) ("This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the federal United States Protection and Advocacy for Individuals with Mental Illness Act.") (emphasis added); *Protection & Advocacy for Persons with Disabilities v. Armstrong*, 266 F. Supp. 2d 303, 307 (D. Conn. 2003); *Iowa Protection and Advocacy Servs., Inc. v. Tanager Place* , 404 F. Supp. 2d 1120, 1121 (N.D. Iowa 2005); *Pennsylvania Protection and Advocacy, Inc. v. Houstoun*, 1999 WL 1045152, *1 (E.D. Pa. 1999); *Advocacy, Inc. v. Brown Schools, Inc.,* 2001 WL 1910563, *1 (W.D. Tex. 2001); *Wisconsin Coalition for Advocacy, Inc. v. State of Wisc. Dept. of Public Instruction,* 407 F. Supp. 2d 988, 989 (W.D. Wis. 2005).

Moreover, even under Defendants' argument that "any lawsuit brought by HDRC must be brought under Hawaii law," (docket # 54

---

[5] 42 U.S.C. section 6001 *et seq.* is the predecessor act to the DD Act, 42 U.S.C. section 15001 *et seq.*

at 24), this Court nonetheless has jurisdiction pursuant to section 1331. The Hawaii law to which Defendants refer is Hawaii Revised Statues section 333F-8.5, which provides:

> (a) <u>The purpose of this section is to comply with federal law</u>, which mandates the states to provide advocacy services to persons with developmental disabilities and mental illness in order to receive federal funds.
>
> (b) The governor may designate an entity or agency to carry out the purposes of this section.
>
> (c) The entity or agency designated by the governor shall have access to all records of any person with developmental disabilities or mental illness, <u>to the extent required by federal law</u>.
>
> (d) The entity or agency so designated by the governor shall provide those advocacy services to persons with developmental disabilities or mental illness <u>as required by federal law</u>. All departments and agencies of the State and <u>the judiciary shall cooperate with the entity or agency so designated to carry out the purposes of this section</u>.

(Emphases added).

Thus, Hawaii law incorporates by reference the DD Act and other federal protection and advocacy acts, requiring any court that considers claims such as HDRC's to construe and apply federal law. As the United States Supreme Court explained in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 125 S. Ct. 2363 (2005):

> Darue was entitled to remove the quiet title action if Grable could have brought it in federal district court originally, 28 U.S.C. § 1441(a), as a civil action "arising under the Constitution, laws, or treaties of the United States," § 1331. <u>This</u>

provision for federal-question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law (*e.g.*, claims under 42 U.S.C. § 1983). There is, however, another longstanding, if less frequently encountered, variety of federal "arising under" jurisdiction, this Court having recognized for nearly 100 years that in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues. *E.g., Hopkins v. Walker,* 244 U.S. 486, 490-491, 37 S. Ct. 711, 61 L. Ed. 1270 (1917). The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues[.]

. . .

. . . [T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.

*Id.* at 314, 125 S. Ct. at 2368 (emphases added).

Last year, in *Empire Healthchoice Assurance, Inc. V. McVeigh*, ___ U.S. ___, 126 S. Ct. 2121 (2006), the United State Supreme Court held that the case before it did not fall within the scope of "federal question" jurisdiction found in *Grable & Sons*: "*Grable* presented a nearly 'pure issue of law,' one 'that could be settled once and for all and thereafter would govern numerous tax sale cases.'* In contrast, Empire's reimbursement claim, McVeigh's counsel represented without contradiction, is

fact-bound and situation-specific." *Id.* at 2137 (emphasis added).

Here, Defendants do no dispute that HDRC is the designated P&A for the State of Hawaii, nor have they disputed that HDRC received a report about incidents of abuse and neglect of developmentally disabled persons at Defendants' facilities.[6] As such, there are no factual disputes in this case. There is only the purely legal question of HDRC's authority to access certain information regarding Defendants' clients.

Because the answer to this purely legal question is found only in federal law, this Court has "federal question" jurisdiction over HDRC's claims pursuant to 28 U.S.C. section 1331, even if Defendants are correct that HDRC's claims arise under Hawaii state law.

**B.   The fact that the DD Act is a funding statute is irrelevant to HDRC's claims.**

The bulk of Defendants' arguments that the DD Act does not create a private right of action center on the premise that "[l]egislation enacted pursuant to Congress' spending authority seldom creates a privately enforceable right of action." (Docket # 54 at 15). From this premise, Defendants further argue that any private right of action arising under such legislation "has

---

[6] Defendants most likely dispute that any incident of abuse or neglect has occurred at any of their facilities; however, that possible factual dispute is irrelevant to HDRC's claims.

been implied only as against an entity which has voluntarily accepted the funds." (Docket # 54 at 17). Because Defendants are not recipients of any funds pursuant to the DD Act, Defendants argue, HDRC does not have an implied right of action against them. (Docket # 54 at 18).

In his dissenting opinion in *Jackson v. Birmingham Board of Education*, 544 U.S. 167 125 S. Ct. 1497 (2005), Justice Thomas explained the reasoning behind the legal principal that legislation enacted pursuant to Congress's spending power rarely creates a right of action:

> This Court has repeatedly held that the obligations Congress imposes on States in spending power legislation must be clear. Such legislation is "in the nature of a contract" and funding recipients' acceptance of the terms of that contract must be "voluntar[y] and knowin[g]." *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 17, 101 S. Ct. 1531, 67 L. Ed. 2d 694 (1981); see also *Barnes v. Gorman,* 536 U.S. 181, 186, 122 S. Ct. 2097, 153 L. Ed. 2d 230 (2002). <u>For their acceptance to be voluntary and knowing, funding recipients must "have notice of their potential liability."</u> *Davis,* 526 U.S., at 641, 119 S. Ct. 1661. Thus, "[i]n interpreting language in spending legislation, we . . . 'insis[t] that Congress speak with a clear voice,'" *id.,* at 640, 119 S. Ct. 1661 (quoting *Pennhurst,* 451 U.S., at 17, 101 S. Ct. 1531), and a condition must be imposed "unambiguously," *ibid.; Gonzaga Univ. v. Doe,* 536 U.S. 273, 280, 122 S. Ct. 2268, 153 L.Ed.2d 309 (2002); *Barnes, supra,* at 186, 122 S. Ct. 2097.

*Id.* at 190-191, 125 S. Ct. at 1514 (emphasis added).

Likewise in *Ball v. Rodgers*, ___ F.3d ___, 2007 WL 2034043 (9th Cir. Jul. 17, 2007), the Ninth Circuit Court of Appeals explained:

> [I]n *Pennhurst State School and Hospital v. Halderman* the Court explained that in cases of "legislation enacted pursuant to the spending power, the *typical remedy* for state <u>noncompliance with federally imposed conditions</u> is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." 451 U.S. 1, 28, 101 S. Ct. 1531, 67 L. Ed. 2d 694 (1981) (emphasis added).

*Id.* at *6 (italicized emphasis in original; underscore emphasis added).

The fundamental flaw in Defendants' argument, and, ergo, all of the cases on which Defendants rely, springs from plaintiffs attempting to **enforce compliance** with a federal statute **against the recipients of federal funds**. Under those circumstances, a court will find that Congress provided a private right of action only when it speaks with a clear voice and when it unambiguously imposes conditions upon funds recipient.

Here, however, Plaintiff HDRC is the **recipient** of the federal funds, pursuant to the DD Act. Moreover, in bringing the instant action, HDRC asserts that **Defendants are interfering** with HDRC's attempts to **comply** with its mandate under the DD Act, which charges HDRC with the duty of "protect[ing] and

11

advocat[ing] the rights of individuals with developmental disabilities[.]" 42 U.S.C. § 15043(a)(1).

As the court in *Manley v. Horsham Clinic*, 2001 WL 894230 (E.D. Pa. 2001), observed, **a mentally ill person** does not have the authority to pursue remedies under the Protection and Advocacy for Mentally Ill Individuals (PAMII) Act; **it is a P&A that possesses that authority**:

> It is the state-established systems then and not individuals that are the subject of this section of the PAMIIA. In other words the plain language of § 10805(a)(1)(c) indicates that its provisions apply to state agencies that are properly constituted under the PAMIIA. It is these agencies that are entrusted with pursuing remedies on behalf of individuals and there is nothing in § 10805(a)(1)(c) that might provide plaintiff with a direct private right of action.

*Id.* at *8 (E.D. Pa. 2001) (emphases added).

As such, the very premise of Defendants' argument regarding funding statutes, and every case to which Defendants cite in that regard, are completely irrelevant.

Moreover, to the extent that Defendants' arguments are at all relevant to the instant case, the mere fact that the DD Act is a funding statute is not dispositive. Although the Court in *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S. Ct. 1531 (1981), held that the Bill of Rights section of the prior version of the DD Act did not include a private right of action, several courts thereafter found that other sections of the prior Act do, indeed, include a private right of action.

*See Mihalcik v. Lensink*, 732 F. Supp. 299, (D. Conn. 1990); *Gieseking v. Schafer*, 672 F. Supp. 1249 (W.D. Mo. 1987); *Martin v. Voinovich*, 740 F. Supp. 1175 (S.D. Ohio 1993); *Nicoletti v. Brown*, 740 F. Supp. 1268 (N.D. Ohio 1987).

Thus, if the question of whether the DD Act is even at all relevant, that question must be answered by looking at the section under which HDRC brings its claim: 42 U.S.C. section 15043. Moreover, regardless of whether one couches the question of whether Congress intended to include a private right of action in the DD Act as an express or implied right, it is beyond cavil that Congress did so intend.

**C. Congress created an express private right of action for state-designated P&As.**

Congress charged P&As such as HDRC with certain duties under the DD Act. The Act requires that, in exchange for receipt of federal funds, a P&A will be charged with the duty of protecting and advocating the rights of individuals with developmental disabilities. 42 U.S.C. § 15043(a)(1). To effectuate this duty, a P&A must have the authority to undertake numerous acts, including the authority "to investigate incidents of abuse and neglect of individuals with developmental disabilities[.]" 42 U.S.C. § 15043(a)(2)(B).

In order to carry out its investigative duties, the P&A must also "have access at reasonable times to any individual

with a developmental disability" and, under particular circumstances, "have access to all records" "of any individual with a developmental disability[.]" 42 U.S.C. §§ 15043(a)(2)(H), (I).

Moreover, Congress expressly provided P&As a remedy to enforce their authority under the DD Act. One of the purposes of the DD Act is to establish "protection and advocacy systems in each State <u>to protect the legal</u> and human <u>rights</u> of individuals with developmental disabilities[.]" 42 U.S.C. § 15001(b)(2) (emphasis added).

The purpose of Part C of the Act "is to provide for allotments to support a protection and advocacy system (referred to in this part as a 'system') in each State <u>to protect the legal</u> and human <u>rights</u> of individuals with developmental disabilities <u>in accordance with this part</u>." 42 U.S.C. § 15041 (emphasis added).

To meet these purposes, section 15043(a)(2)(A)(i)--also in Part C of the Act--provides that  P&As "shall":

(A) have the authority to--

(i) <u>pursue legal</u>, administrative, and other appropriate <u>remedies</u> or approaches <u>to ensure the protection of</u>, and advocacy for, <u>the rights of [individuals with developmental disabilities]</u> within the State who are or who may be eligible for treatment, services, or habilitation, or who are being considered for a change in living arrangements, with particular attention to members of ethnic and racial minority groups[.]

14

42 U.S.C. § 15043(a)(2)(A)(i) (emphases added).

In addition to this provision, 45 C.F.R. section 1386.25

provides that allotments made pursuant to the DD Act:

> may be used to pay the otherwise allowable costs incurred by a Protection and Advocacy System in bringing lawsuits *in its own right* to redress incidents of abuse or neglect . . . impacting on individuals with developmental disabilities to obtain access to records *and* when it appears on behalf of named plaintiffs or a class of plaintiffs for such purpose.

(Emphases added). Section 1386.21(c) provides in pertinent part:

> A Protection and Advocacy System shall not implement a policy or practice restricting the remedies which may be sought on the behalf of individuals with developmental disabilities or compromising the authority of the Protection and Advocacy System (P&A) to pursue such remedies through litigation, legal action or other form of advocacy.

(Emphases added).

Based on these provisions, numerous courts have held that a

state-appointed P&A:

> has standing to sue *on its own behalf* and on behalf of it constituents. *See* 42 U.S.C. § 15043(a)(2)(A)(i) (authorizing an Advocacy and Protection system to pursue legal, administrative, and other appropriate remedies or approaches on behalf of the developmentally disabled); *Doe v. Stincer*, 175 F.3d 879, 886 (11th Cir. 1999) (holding that the Advocacy Center has standing to bring suit under Title 42, United States Code, Section 10801, *et seq.*).

*Advocacy Ctr. for Persons with Disabilities, Inc. v. Woodlands*

*Estates Assoc., Inc.,* 192 F. Supp. 2d 1344, 1345-46 (M.D. Fla.

2002) (emphases added); *see also Ohio Legal Rights Serv. v.*

*Buckeye Ranch, Inc.,* 365 F. Supp. 2d 877, 883 (S.D. Ohio 2005) ("PAMII provides [P&A] systems with the <u>independent authority to pursue legal remedies</u> to ensure the protection of individuals with mental illness. <u>This authority has led courts to conclude that protection and advocacy systems have standing to bring actions for declaratory or injunctive relief in a judicial forum.</u>") (citing *Protection & Advocacy for Persons with Disabilities v. Armstrong,* 266 F. Supp. 2d 303, 311-12 (D. Conn. 2003)) (emphases added).

In *Risinger v. Concannon,* 117 F. Supp. 2d 61 (D. Me. 2000), the court discussed the breadth of a P&A's standing under the DD Act, PAMII, and PAIR:

> In support of its claim of standing to sue on behalf of children who have mental health impairments, DRC has invoked provisions of three statutes: the federal Developmental Disabilities Assistance and Bill of Rights Act ("DDA"), 42 U.S.C. § 6042(a)(2)(A), the federal Protection and Advocacy for Mentally Ill Individuals Act ("PAMI"), 42 U.S.C. §§ 10805(a)(1)(B), (C), and the State of Maine's Protection and Advocacy for Persons with Developmental or Learning Disabilities or Mental Illnesses Act, 5 M.R.S.A. § 19505(3). The DDA requires states, as a condition of receiving federal financial assistance, to "have in effect a system to protect and advocate the rights of individuals with developmental disabilities." 42 U.S.C. § 6042(a)(1). The statute goes on to mandate that the "system must have the authority to pursue legal, administrative and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of such individuals within the State who are or who may be eligible for treatment, services, or habilitation, or who are being considered for a change in living arrangements, with particular attention to members of ethnic and racial

minority groups." 42 U.S.C. § 6042(a)(2)(A)(i). The PAMI sets forth similar requirements for the protection of individuals who have mental illnesses, *see* 42 U.S.C. § 10805(a)(1)(B), and also directs states to grant the system

> authority . . . to pursue administrative, legal, and other remedies on behalf of an individual who was a[n] individual with mental illness; and is a resident of the State; but only with respect to matters which occur within 90 days after the date of the discharge of such individual from a facility providing care or treatment.

42 U.S.C. § 10805(a)(1)(B). . . . The parties do not dispute that Plaintiff DRC is the agency designated pursuant to this statutory scheme.

These statutes grant standing to Plaintiff DRC to file claims on behalf of the minor Plaintiffs in this case. Federal courts interpreting the DDA and PAMI have uniformly concluded that the relevant provisions confer standing to sue on behalf of individuals with mental illness and developmental disabilities. *See Doe v. Stincer,* 175 F.3d 879, 885-86 (11th Cir. 1999) (holding that 42 U.S.C. § 10805 confers standing to bring suit on behalf of individuals with mental illness); *Brown v. Stone,* 66 F.Supp.2d 412, 422-23 (E.D.N.Y. 1999) ("standing appears warranted" under 42 U.S.C. § 10805); *Tennessee Protection and Advocacy, Inc. v. Board of Education of Putnam County, Tennessee,* 24 F. Supp. 2d 808, 814 (M.D. Tenn. 1998) (finding implicit Congressional grant of standing "to advocacy groups to advocate for disabled individuals to the full extent permitted by Article III" in 42 U.S.C. § 6041); *Rubenstein v. Benedictine Hospital,* 790 F. Supp. 396, (N.D.N.Y. 1992) (finding standing under 42 U.S.C. § 10801, given its "broad remedial purposes" and "the statutory language apparently conferring a right upon entities such as DAI to pursue legal remedies"); *Michigan Protection and Advocacy Service, Inc. v. Babin,* 799 F. Supp. 695, 702 n.12 (E.D. Mich. 1992) (finding in reference to both statutes that "[i]t was clearly the intention of Congress that the M.P.A.s and other similar advocacy groups represent and, if necessary, litigate on behalf of individuals suffering from developmental

17

disabilities"), *affirmed on other grounds,* 18 F.3d 337 (6th Cir.1994); *Protection and Advocacy, Inc. v. Murphy,* 1992 WL 59100, *10 (N.D. Ill. 1992) ("<u>Federal courts have uniformly found that protection and advocacy systems have standing to sue in their own name to protect the rights of injured developmentally disabled or mentally ill individuals</u>."); *Goldstein v. Coughlin,* 83 F.R.D. 613, 614 (W.D.N.Y. 1979) (reasoning that "given the Congressional purpose to provide retarded persons with legal representation, as revealed in § 6012," state's designated advocacy group "need show no injury to itself in order to have standing in this action"). Given the broad remedial purposes of the DDA and PAMI, Plaintiff DRC's status as the designated advocacy group, and the specific language in 5 M.R.S.A. § 19505(3) regarding the ability to pursue legal remedies "on behalf of persons with disabilities," this Court likewise concludes that Plaintiff DRC has been granted standing to sue on behalf of the children in this case.

*Id.* at 69-70 (emphases added).

Here, HDRC brings this action as part of its duty "to ensure the protection of . . . the rights of [individuals with developmental disabilities] within the State[.]" 42 U.S.C. § 15043(a)(2)(A)(i). As such, HDRC is exercising the express right of action that Congress granted it, as the designated P&A system for the state of Hawaii. (Docket 01-1 ¶ 4).

**D. Congress created an implied private right of action for state-designated P&As.**

Even if the Court does not conclude that section 15043 includes an express right of action, reading that statute in its entirety leaves no doubt that Congress impliedly created such a right, given Congress's mandate that the state must appoint an **effective** P&A:

> In order for a State to receive an allotment under subchapter II of this chapter-
>
> (1) the State must have *in effect* a system to protect and advocate the rights of persons with developmental disabilities;

42 U.S.C. § 6042(a) (emphasis supplied). The district court properly used the adjectival form of "effect" to describe the barebones minimum required of the State of Mississippi in consideration of its annual receipt of significant amounts of federal dollars. . . . In the case at bar, by requiring an effective system the trial court did not create a substantive standard beyond the plain text of the statute.

. . .

The [DD] Act not only described the range of services to be provided by the protection and advocacy systems, it also states that the systems "must have the authority" to perform these services. The state cannot satisfy the requirements of the DDA by establishing a protection and advocacy system which has this authority in theory, but then taking action which prevents the system from exercising that authority. Defendants' restrictive practices have reduced MP & A's authority to the point that it can offer Boswell residents only a fraction of the services to which they are entitled.

We are in full accord. The mandatory provisions of section 6042 relating to authority to investigate incidents of abuse and neglect are rendered nugatory by the Center's restrictions on MP & A. § 6042(a)(2)(B). Similarly, MP & A is prevented from performing its statutory duty of establishing a grievance procedure for clients or prospective clients. § 6042(a)(2)(D). The regulations are such that MP & A has virtually no access to clients not retained prior to the change in the regulations. Most importantly, the Center's regulations render the state's requirement to "have in effect a system to protect and advocate the rights of persons with developmental disabilities" comatose if not moribund.

19

§ 6042(a)(2). The trial court did not err in finding a violation of the Act.

*Mississippi Protection & Advocacy Sys., Inc. v. Cotton*, 929 F.2d 1054, 1058-59 (5th Cir. 1991) (emphases added).

Other courts have held likewise:

Allowing Advocacy to access JPS records concerning Sawin is not an accusation or indictment of JPS, but <u>merely allows Advocacy to comply with a Congressional mandate</u>. *See Michigan Prot. & Advocacy Svc., Inc. v. Miller,* 849 F. Supp. 1202, 1204. (W.D. Mich. 1994) (citing 42 U.S.C. § 10803). Further, at least some courts have considered it a service to the facilities who provide mental health services when abuse and neglect are uncovered and corrected. *Ala. Disabilities Advocacy Program,* 97 F.3d at 499.

<u>When a facility such as JPS denies or places restrictions on an advocacy agency's access to records, the mandatory provisions relating to authority to investigate incidents of abuse and neglect are rendered nugatory</u>. *Mississippi Prot. & Advocacy Sys., Inc. v. Cotten,* 929 F.2d 1054, 1059 (5th Cir. 1991).[8] <u>This not only hampers redress of past and current abuse and neglect, but has a detrimental effect on the advocacy agency's future performance of its statutory mandate</u>. *Id.* <u>Advocacy must have the authority to pursue legal, administrative, and other appropriate remedies to ensure that the rights of the mentally ill are not violated</u>. *Id. See generally* 42 U.S.C. § 10805(a)(1). Timely access to records is essential for effective communication, *Robbins v. Budke,* 739 F. Supp. 1479, 1488 (D.N.M. 1990), and access to patient records is necessary for the P & A system to serve its clients, evaluate client concerns, and determine whether a client has a legal claim. *Id.*

[8] The Fifth Circuit was applying the parallel provisions of 42 U.S.C. § 6042 because the case dealt with a developmentally disabled patient. *See generally* 42 U.S.C. § 6042 (providing for advocacy system to investigate cases of alleged abuse and neglect of developmentally disabled individuals), but Congress's enactment of PAMII in 1986 extended the same type of protections to

20

> persons with mental illness. *Cotten* also dealt
> with physical access to the health care facility;
> however, <u>the spirit of *Cotten*, as well as 42
> U.S.C. § 6042 and 42 U.S.C. § 10805, is an
> affirmation of the advocacy agency's *right to
> access,* whether it be physical access to patients
> or access to patient records</u>. *Compare* 42 U.S.C. §
> 6042 *with* 42 U.S.C. § 10805. *See also Iowa Prot.
> & Advocacy Svcs., Inc. v. Gerard Treatment
> Programs, L.L.C.,* 152 F.Supp.2d 1150, 1166
> (N.D.Iowa 2001); *Ariz. Ctr. for Disability Law,*
> 197 F.R.D. at 692.

*Advocacy Inc. v. Tarrant County Hosp. Dist.*, 2001 WL 1297688, *4

(N.D. Tex. 2001) (emphases added); *see also Georgia Advocacy

Office v. Borison,* 238 Ga. App. 780, 783, 520 S.E.2d 701, 704

(Ga. Ct. App. 1999).

Clearly, Congress could not have and did not intend to

clothe P&As with the duty of protecting and advocating for

individuals with developmental disabilities by way of, *inter

alia*, conducting investigations into allegations of abuse and

neglect of such individuals, but at the same time, foreclose any

right those P&As might have to judicially pursue those who

interfere with that duty and authority.

**E.   Section 15044 provides further evidence of Congress's
intent to create a private right of action for state-
designated P&As.**

Another indication that Congress intended to provide P&As

with both the right and the remedy to bring claims under the DD

Act is section 15044(b)(1), which provides:

<u>Legal action</u>

(1) In general

<u>Nothing in this subchapter shall preclude a [P&A]
system from bringing a suit on behalf of individuals
with developmental disabilities against a State, or an
agency or instrumentality of a State</u>.

42 U.S.C. § 15044(b)(1) (emphases added).

This section is significant because, as the United States Supreme Court explained in *Gonzaga University*, "Plaintiffs suing under § 1983 do not have the burden of showing an intent to create a <u>private remedy</u> because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes." 536 U.S. at 284 (emphasis added). "But the initial inquiry--determining whether a statute confers any right at all--is no different from the initial inquiry in an implied right of action case[.]" *Id.* at 285.

Moreover, the Court explained in *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 125 S. Ct. 1453 (2005), that where a plaintiff has shown that Congress intended to create a private right of action:

> "<u>there is [] a rebuttable presumption that the right
> is enforceable under § 1983</u>." *Blessing v. Freestone,*
> 520 U.S. 329, 341, 117 S. Ct. 1353, 137 L. Ed. 2d 569
> (1997). The defendant may defeat this presumption by
> demonstrating that <u>Congress did not intend that remedy
> for a newly created right</u>. *See ibid.; Smith v.
> Robinson,* 468 U.S. 992, 1012, 104 S. Ct. 3457, 82 L.
> Ed. 2d 746 (1984). Our cases have explained that
> <u>evidence of such congressional intent may be found
> directly in the statute creating the right, or</u>

> inferred from the statute's creation of a "<u>comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983</u>." *Blessing, supra,* at 341, 117 S. Ct. 1353. *See also Middlesex County Sewerage Authority v. National Sea Clammers Assn.,* 453 U.S. 1, 19-20, 101 S. Ct. 2615, 69 L. Ed. 2d 435 (1981). "<u>The crucial consideration is what Congress intended</u>." *Smith, supra,* at 1012, 104 S. Ct. 3457.

*Id.* at 120, 125 S. Ct. at 1458 (emphases added).

Here, Congress not only did not evidence any intent in the DD Act that a remedy under section 1983 is not available, **it expressly provided that such a remedy is available.**

Given that the question of whether a remedy under section 1983 does not even arise unless Congress intended that the statute provides a private right, Congress had no reason to include a provision in the DD Act expressly providing for a section 1983 remedy unless it also intended to include a private right in the Act.

**F.    The implementing regulation of the DD Act is enforceable.**

45 C.F.R. section 1386.22(i) provides:

> If a system is denied access to facilities and its programs, individuals with developmental disabilities, or records covered by the Act it shall be provided promptly with a written statement of reasons, including, in the case of a denial for alleged lack of authorization, the name and address of the legal guardian, conservator, or other legal representative of an individual with developmental disabilities.

With regard to this regulation, Defendants argue only: "A federal agency's regulations cannot independently create rights

23

enforceable in federal court." (Docket # 54 at 28). Defendants' two-sentence argument hardly informs the issue of whether HDRC may bring a claim pursuant this regulation.

In *Alexander v. Sandoval*, 532 U.S. 275, 121 S. Ct. 1511, (2001), the United States Supreme Court explained the force and effect of regulations:

> We do not doubt that regulations applying § 601's ban on intentional discrimination are covered by the cause of action to enforce that section. Such regulations, if valid and reasonable, authoritatively construe the statute itself, see *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257, 115 S. Ct. 810, 130 L. Ed. 2d 740 (1995); *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-844, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984), and it is therefore meaningless to talk about a separate cause of action to enforce the regulations apart from the statute. A Congress that intends the statute to be enforced through a private cause of action intends the authoritative interpretation of the statute to be so enforced as well.

*Id.* at 284-286 (emphases added).

Here, Defendants do not argue that section 1386.22(i) is not "valid and reasonable" or that it does not "authoritatively construe the statute itself." Indeed, 42 U.S.C. section 15043(a)(2)(I)(iii) provides that a P&A "shall have access to all records of":

> any individual with a developmental disability, in a situation in which--
> (I) the individual has a legal guardian, conservator, or other legal representative;

(II) a complaint has been received by the system about the individual with regard to the status or treatment of the individual or, as a result of monitoring or other activities, there is probable cause to believe that such individual has been subject to abuse or neglect;

(III) such representative has been contacted by such system, upon receipt of the name and address of such representative;

(IV) such system has offered assistance to such representative to resolve the situation; and

(V) such representative has failed or refused to act on behalf of the individual[.]

(Emphases added).

In other words, before a P&A may have access to the records of an individual with a developmental disability who has a legal guardian, conservator, or other legal representative, the P&A **must first contact** the legal guardian, conservator, or other legal representative. As such, the regulation set forth in 45 C.F.R. section 1386.22(i) is completely valid and reasonable and authoritatively construes the statute itself.

Indeed, in *Alabama Disabilities Advocacy Program v. J.S. Tarwater Development Center*, 894 F. Supp. 424 (M.D. Ala. 1995), the court stated:

> The court agrees with the Fifth Circuit Court of Appeals that the Act requires "an 'effective' system of advocacy." *Mississippi Protection & Advocacy System v. Cotten,* 929 F.2d 1054, 1058-59 (5th Cir. 1991). Any other reading would attribute to Congress an intent to pass an ineffective law. The authority to investigate would mean nothing and advocacy in the form of investigation would be ineffective without access to records. Indeed, *even if the Act did not mention records*, a strong argument could be made that the

> Advocacy Program would be entitled to all information necessary to investigate incidents of abuse and neglect if the prerequisites of a report or probable cause are met.

*Id.* at 429 (emphases added).

Here, even though the DD Act itself does not mention a P&A's access to the names and addresses of legal guardians, conservators, or other legal representatives, because the Act requires a P&A to first contact those persons, that information is necessary in order for a P&A to conduct an effective investigation into reports of incidents of abuse and neglect. As such, a P&A must be entitled to the information.

**G.   This Court has jurisdiction over HDRC's state law breach of contract claim.**

Defendants do not argue, nor could they, this Court did not properly exercise its supplemental jurisdiction over HDRC's pendant state law breach of contract claim. They do, however, argue that should the Court dismiss HDRC's federal claims, it must also dismiss the state law claim. In actuality, if the Court were to dismiss HDRC's federal claims pursuant to Federal Rule of Civil Procedure 12(b)(6), it need not also dismiss the state law claim: "[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514, 126 S. Ct. 1235, 1244-45 (2006).

**III. CONCLUSION**

    Based on the foregoing, Plaintiff respectfully requests this Honorable Court to deny Defendants' motion to dismiss this action.

DATED: September 5, 2007          *Shults & Tamm, LLP*


                                _/s/ Bradley R. Tamm_____
                                LISSA D. SHULTS
                                BRADLEY R. TAMM

                                Attorneys for Plaintiff
                                HAWAII DISABILITY RIGHTS
                                CENTER