IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HAWAI'I DISABILITY RIGHTS CENTER, a Hawaii Corporation, | ) ) ) | CV. NO. 06-00605 DAE-BMK |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| SUSANNA F. CHEUNG, in her capacity as President and Chief Executive Officer of Opportunities for the Retarded, Inc.; and OPPORTUNITIES FOR THE RETARDED, INC., a Hawaii corporation, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

On September 24, 2007, the Court heard Defendants Susanna F.

Cheung ("Cheung") and Opportunities for the Retarded Inc.'s ("ORI") Motion to

Dismiss.[1]   Bradley Tamm, Esq., Lissa Schults, Esq., and Peter Olson, Esq.,

---

[1]      Defendants' Notice of the Motion to Dismiss indicates that ORI is the party that is moving to dismiss, not Cheung.  Additionally, the conclusion in the Motion to Dismiss states that the pertinent statute at issue is not enforceable against ORI in federal court, without mentioning Cheung.  Still, the reply memorandum suggests that both Cheung and ORI brought the Motion to Dismiss, collectively, as it is made in support of both Defendants.  As such, the Court will construe the instant Motion to Dismiss as having been brought on behalf of both

(continued...)

appeared at the hearing on behalf of Plaintiff; Todd Boley, Esq., and John Komeiji, Esq., appeared at the hearing on behalf of Defendants.  After reviewing Defendants' Motion and the supporting and opposing memoranda, the Court DENIES Defendants' Motion to Dismiss.

BACKGROUND

On November 9, 2006, Plaintiff Hawaii Disability Rights Center ("Plaintiff") filed a Complaint for Declaratory and Injunctive Relief against Defendants Cheung and ORI (collectively, "Defendants").  According to the Complaint, Plaintiff is a Hawaii corporation that is the State of Hawaii's ("State") designated protection and advocacy agency ("P&A Agency").  (Complaint ¶ 9.) ORI is a Hawaii corporation that is a provider of adult day programs, educational, residential, and vocational services to individuals with developmental disabilities. It operates various subdivisions, including Helemano Village, a residential facility for persons with developmental disabilities, and it is a provider of Home and Community Based Services in the State.  (Id. ¶ 12.)  Cheung is the President and Chief Executive Officer of ORI, who is responsible for the management of the

_____

[1](...continued)
Defendants, Cheung and ORI.

corporation and its subdivisions and for ensuring full compliance with state and federal law.  (Id. ¶ 10.)

   The following factual allegations are contained in Plaintiff's Complaint.  On August 25, 2005, before Plaintiff filed the instant Complaint, Plaintiff filed a Complaint for Declaratory Relief, alleging violations of the Developmental Disabilities Assistance and Bill of Rights Act ("Developmental Disabilities Act" or "the Act"), 42 U.S.C. § 15001 et seq., and Hawaii Revised Statutes ("Haw. Rev. Stat.") § 333F-8.5, which this Court dismissed with prejudice on June 5, 2006, according to a proposed settlement.  See HDRC v. Cheung, et al., CV NO. 05-00557 DAE-LEK.  The Court, however, retained jurisdiction to reopen the proceeding within 30 days of the dismissal, upon a showing of good cause, if the proposed settlement conditions were not satisfied.  (Docket No. 34.)  Two days later, the parties entered into a Settlement Agreement ("Agreement"), whereby ORI agreed to provide Plaintiff access to its facilities, records, and clients pursuant to certain terms and conditions attached to the Agreement.  (Complaint ¶ 18.)

   On or about August 24, 2006, Plaintiff received a complaint detailing allegations of system-wide and individual abuses and neglect to which ORI purportedly subjected its clients.  (Id. ¶ 20.)  Those allegations include "mismanagement of client funds, theft, fraud, misapplication of medications,

3

analysis

verbal abuse of clients, and concealment of records and files of clients from

Plaintiff's regular monitoring activities." (Id.)  Based on that complaint, four days

later, Plaintiff provided written notice to ORI, by and through Cheung, that it had

received the complaint.  (Id. ¶ 21.)  In that letter, Plaintiff made a request to review

the records of each of ORI's clients.  (Id.)  To do so, Plaintiff requested that

Defendants provide it with the names and addresses of all legal guardians,

conservators, and legal representatives of clients to whom ORI provided services

so that it could access the records and investigate the alleged abuses and neglect.

ORI, by and through Cheung, denied that request.  (Id. ¶ 22.)  Plaintiff sent three

separate letters thereafter, all dated in September 2006, informing ORI of its

obligations under the Developmental Disabilities Act.  ORI, by and through

Cheung, refused each request.  (Id. ¶ 24.)

            Based on those refusals, Plaintiff brought the instant cause of action

pursuant to the Developmental Disabilities Act, 42 U.S.C. § 15043, and its

supporting regulations, 24 C.F.R. § 1386.22, to compel Defendants to comply with

its requests.  Plaintiff also brought a claim for breach of the terms of the

Agreement, which claim is not before the Court at this time.  After partial

discovery, Plaintiff moved to compel an answer to an interrogatory request,

namely, interrogatory number 2 requesting information pertaining to the names and

addresses of the legal guardians, conservators, and legal representatives of clients.

On July 13, 2007, Magistrate Judge Leslie E. Kobayashi ("Magistrate Judge")

issued an Order Granting in Part and Denying in Part Plaintiff's Motion to Compel

("Order to Compel"), in which she ordered Defendants to respond to Plaintiff's

interrogatory request no later than August 17, 2007.  Meanwhile, on July 18, 2007,

Defendants filed the instant Motion to Dismiss the entire complaint for lack of a

private right of action in federal court under the Developmental Disabilities Act,

raising an issue of first impression.

On July 26, 2007, Defendants filed a Motion for Order Staying

Enforcement of Magistrate's Order Compelling Discovery ("Motion to Stay") until

the Court determined the jurisdictional issue, arguing that immediate release of the

requested information could result in the disclosure of confidential information

and, thus, irreparable harm.  Thereafter, on August 7, 2007, the Magistrate Judge

issued a protective order to control the use, release, and dissemination of the

information, including "the names and addresses of all legal guardians,

conservators, and legal representatives of all persons with disabilities," thereby

protecting any confidential information.  Based on the protective order, the Court

issued an Order denying Defendants' Motion for Stay ("Order Denying Stay") on

the ground that the protective order negated the sole concern of confidentiality at

5

issue and, thus, Defendants could not prove irreparable harm.  Defendants then filed a Motion for Reconsideration of the Order Denying Stay on the ground that the Court did not have jurisdiction to make that decision.  The Court denied the Motion for Reconsideration on the basis that it had authority to decide non-dispositive matters, such as those concerning discovery, without first deciding jurisdiction.  Nonetheless, the Court held off on deciding two, additional pending matters until it determined jurisdiction: (1) objections to the Magistrate Judge's findings and recommendation, and (2) Defendants' appeal of the Magistrate Judge's Order to Compel.

On September 5, 2007, Plaintiff opposed the Motion to Dismiss, and, on September 13, 2007, Defendants filed a reply.  During the hearing on the motion, Plaintiff raised a new argument, to be discussed herein, that was not raised in its opposition.  Because Plaintiff had not briefed the new argument, the Court gave the parties until September 28, 2007 to submit supplemental briefing on the matter.  On September 28, 2007, both parties filed supplemental memoranda to address that argument.

## STANDARD OF REVIEW

Defendants bring the instant motion pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) for lack of subject matter jurisdiction and

Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  The Court has noted that "there is no controlling appellate authority regarding whether Rule 12(b)(1) or Rule 12(b)(6) governs" in a case involving the absence of a private right of action. Hawaii Motor Sports Center v. Babbitt, 125 F. Supp. 2d 1041, 1046 n.2 (D. Haw. 2000) (examining the case involving a private right of action as one brought pursuant to Fed. R. Civ. P. 12(b)(1)).  Defendants, in essence, assert that Plaintiff may not sustain its cause of action in federal court under the Developmental Disabilities Act for lack of a federal right of action, but only in state court under the State's implementing statute, thus depriving the Court of its jurisdiction over the subject matter.  The Court, therefore, will address the instant claim under Fed. R. Civ. P. 12(b)(1) as a motion to dismiss for lack of subject matter jurisdiction.

In a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the initial burden of proving that subject matter jurisdiction exists. Prescott v. United States, 973 F.2d 696, 701 (9th Cir. 1992).  In other words, there is a presumption against jurisdiction unless the plaintiff proves otherwise.  See Stock West, Inc. v. Confederated Tribes of the Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989).  A Fed. R. Civ. P. 12(b)(1) motion "for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction

7

in fact."  Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733

(9th Cir. 1979).  A facial attack occurs when the movant "asserts that the

allegations contained in a complaint are insufficient on their face to invoke federal

jurisdiction."  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir.

2004).  "By contrast, in a factual attack, the challenger disputes the truth of the

allegations that, by themselves, would otherwise invoke federal jurisdiction."  Id.

        Because Defendants argue that the allegations, on their face, are

insufficient to invoke federal jurisdiction, regardless of the factual basis, the Court

construes the instant arguments as a facial attack.  In resolving a facial attack, "the

district court must accept the allegations of the complaint as true."  Mason v.

Arizona, 260 F. Supp. 2d 807, 815 (D. Ariz. 2003).  "Unlike a Rule 12(b)(6)

motion, however, the court will not reasonably infer allegations sufficient to

support federal subject matter jurisdiction because a plaintiff must affirmatively

allege such jurisdiction."  Id.  For a facial attack, the court will grant the motion

"only if the plaintiff fails to allege an element necessary for subject matter

jurisdiction."  Denney v. Drug Enforcement Admin., No. CIV.S-06-1711, 2007

WL 2344900, at *3 (E.D. Cal. August 15, 2007).  "A complaint will be dismissed

for lack of subject matter jurisdiction (1) if the case does not 'arise under' any

federal law or the United States Constitution, (2) if there is no case or controversy

within the meaning of that constitutional term, or (3) if the cause is not one

described by any jurisdictional statute." Id. (citing Baker v. Carr, 369 U.S. 186,

198 (1962)).

## DISCUSSION

Defendants raise an issue of first impression on whether the

Developmental Disabilities Act gives rise to a private right of action in federal

court to enforce the provisions of the Act.  Courts have permitted suit in federal

court pursuant to the Developmental Disabilities Act without first deciding whether

the Act permits a private right of action, as that question was not raised.  See, e.g.,

Tenn. Prot. & Advocacy, Inc. v. Wells, 371 F.3d 342, 344 (6th Cir. 2004)

(permitting suit in federal court by a "federally-mandated independent non-profit

agency that investigates allegations of abuse against the disabled" under the

Developmental Disabilities Act, without determining whether a private right of

action exists); Disability Rights Wisc., Inc. v. Wisc. Dep't of Public Instruction,

463 F.3d 719, 722 (7th Cir. 2006) (permitting suit in federal court by a

state-designated protection and advocacy agency, without deciding whether a

private right of action exists); Alab. Disabilities Advocacy Program v. J.S.

Tarwater Dev. Ctr., 97 F.3d 492, 494-95 (11th Cir. 1996) (permitting suit in federal

court by a state-designated protection and advocacy agency, without questioning

the private right of action).  Consequently, although those circuits likely would not

have permitted suit in federal court had they believed that the Act precluded a

private right of action, those decisions are not dispositive.

Defendants argue that any private right of enforcement that Plaintiff

might have arises under the State's implementing statute, Hawaii Revised Statutes

("Haw. Rev. Stat.") § 333F-8.5, thus creating a question of state law for a state

court to consider, not a private right of action under the Developmental Disabilities

Act for a federal court to consider.  Plaintiff responds that the Court has federal

jurisdiction under the Developmental Disabilities Act and/or 28 U.S.C. § 1331.

The federal-question statute, 28 U.S.C. § 1331, is raised as a jurisdictional basis for

the allegations in the Complaint.

"Under 28 U.S.C. § 1331, '[t]he district courts shall have original

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of

the United States.'"  Williams v. United Airlines, Inc., No. 05-17072, 2007 WL

2458504, at *2 (9th Cir. August 31, 2007) (citing the language of 28 U.S.C.

§ 1331).  That "general federal-question jurisdiction statute is applicable only

when the plaintiff sues under a federal statute that creates a right of action in

federal court."  Id. (emphasis added).  Thus, 28 U.S.C. § 1331 does not alone serve

as a basis for federal jurisdiction, absent a federal statute creating such a right of

action in federal court.  For a statute to create a private right of action, Congress

must have intended to create not only a private right but also a private remedy.  <u>See</u>

<u>Alexander v. Sandoval</u>, 532 U.S. 275, 286 (2001).  Congress's intent can be either

express or implied.  <u>See</u> <u>Touche Ross & Co. v. Redington</u>, 442 U.S. 560, 568-78

(1979); <u>Oliver v. Sealaska Corp.</u>, 192 F.3d 1220, 1223 (9th Cir. 1999).

A court will reach the test for an implied private right of action only

when the statute does not expressly provide for a private right of action.  <u>See</u> <u>Cort</u>

<u>v. Ash</u>, 422 U.S. 66, 78 (1975), <u>departed from by</u> <u>Touche Ross & Co.</u>, 442 U.S.

560, <u>Transamerica Mortgage Advisors, Inc. v. Lewis</u>, 444 U.S. 11 (1979);

<u>Williams</u>, 2007 WL 2458504, at *3.  That test is whether (1) the plaintiff is part of

the class "for whose especial benefit the statute was enacted," (2) Congress

intended, explicitly or implicitly, to create a private remedy for the plaintiff, (3) the

underlying scheme of the statute comports with such a private right and remedy,

and (4) the cause of action is one that traditionally is relegated to state law, as a

concern of the states, and, thus, would be inappropriate for federal courts to

consider.  <u>Cort</u>, 422 U.S. at 78.   The second factor is the factor on which courts

most widely have focused since <u>Cort</u>.  <u>See</u> <u>Williams</u>, 2007 WL 2458504, at *3.

Before inquiring into whether the Developmental Disabilities Act creates an

express or an implied private right of action, the Court first will address a

11

confusion that appears to exist from the parties' arguments, namely, Plaintiff's: the difference between standing and a private right of action.

A.  <u>Standing v. Private Right of Action</u>

To prove that a private right of action exists, Plaintiff predominantly relies on cases that involve the standing of P&A Systems, including agencies such as Plaintiff, to bring suit for declaratory and injunctive relief in federal court.  The courts in those cases did not, however, touch on whether the federal statutes at issue authorized a private right of action for enforcement in federal court, as that was not the question at hand.  <u>See</u>, <u>e.g.</u>, <u>Developmental Disabilities Advocacy Ctr., Inc. v. Melton</u>, 689 F.2d 281, 288 (1st Cir. 1982) (concluding that the state advocacy agency had standing to bring the action); <u>Ohio Legal Rights Serv. v. Buckeye Ranch, Inc.</u>, 365 F. Supp. 2d 877, 883 (S.D. Ohio 2005) (determining, with other courts, in a case involving a related Act, Protection and Advocacy for Mentally Ill Individuals Act ("PAMII"), that "protection and advocacy systems have standing to bring actions for declaratory or injunctive relief in a judicial forum"); <u>Advocacy Ctr. for Persons with Disabilities, Inc. v. Woodlands Estates Assoc., Inc.</u>, 192 F. Supp. 2d 1344, 1345-46 (M.D. Fla. 2002) (noting that the state's "Protection and Advocacy system [] ha[d] standing to sue on its own behalf and on behalf of it constituents"); <u>Risinger v. Concannon</u>, 117 F. Supp. 2d 61,

12

69-70 (D. Me. 2000) (finding that the state's Disability Rights Center had standing to sue on behalf of the children in that case).

One might argue that a finding of standing, which includes the power to grant relief in a federal court, implicitly includes a finding that the federal law under which the party is suing creates a federal right of action for which a federal remedy is available.  That undoubtably would be true of statutory standing inquiries because the inquiry for statutory standing is similar (if not identical) as that for a private right of action.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 96-98, 117-18 & 118 n.6 (1998) (Stevens,  J., with whom Souter, J. joins as to part I, among other parts, concurring) (fleshing out the statutory standing question as one that asks whether a particular plaintiff may sue as a member of the class that a statute was intended to benefit).  In fact, the question of whether a particular party can enforce compliance with provisions of a particular Act has been framed in terms of a "private right of action to enforce compliance" and "standing to bring such a suit," as well as the court's jurisdiction to entertain such a suit.  See Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers, 414 U.S. 453, 455-56 (1974).  However framed, the focus is on whether the Act, with a review of the legislative history, permits suit by a private party to enforce the duties and obligations that the Act imposes.  See id. at 456 ("[H]owever phrased,

the threshold question clearly is whether the [] Act or any other provision of law

creates a cause of action whereby a private party . . . can enforce duties and

obligations imposed by the Act[.]")

Nonetheless, unlike statutory standing, such an implicit finding of a

private right of action could not necessarily be made with a constitutional standing

determination, which involves a constitutional inquiry, not a statutory one.  See

Steel Co., 523 U.S. at 102 (noting that constitutional standing derives from Article

III, § 2, of the United States Constitution to determine whether a case-or-

controversy exists that is "amenable to, and resolved by, the judicial process").

Briefly, the constitutional standing doctrine focuses on whether a party has

suffered some injury in fact that is causally connected to the complained-of

conduct, which injury properly may be redressed in federal court.  See  Lujan v.

Defenders of Wildlife, et al., 504 U.S. 555, 560-61 (1992).  The inquiry is not one

of congressional intent, which is the cornerstone of the private right of action

inquiry.  See Transamerica Mortgage Advisors, Inc., 444 U.S. at 15-16 (finding

that the ultimate determination for a private right of action is "whether Congress

intended to create the private remedy asserted"); Gonzaga Univ. v. Doe, 536 U.S.

273, 283 (2002) (determining that the appropriate question is whether Congress

"intended to create a federal right").  See generally Chemerinsky, Federal

Jurisdiction § 6.3, at 392 (discussing a private right of action, as a creation of common law, to effectuate congressional intent).   Rather, the constitutional inquiry is concerned with the justiciability of the claim in federal court, as one that is appropriate for the federal judiciary to hear rather than, for instance, another branch of government or forum.  See generally Erwin Chemerinsky, Federal Jurisdiction § 2.1 (5th ed. 2007) (discussing the policies and principles underlying the standing requirement and the concept of "justiciability," including separation of powers, conservation of judicial resources, nature of the case, and fairness rationales).

Indeed, the Supreme Court not only has separated the two inquiries, but it has found that the statutory inquiry may be made, and possibly should be made, before the inquiry into Article III standing.  "[F]or it is only if such a [private] right of action exists that we need consider whether the respondent had standing to bring the action and whether the District Court had jurisdiction to entertain it."  Nat'l R.R. Passenger Corp., 414 U.S. at 456.  For that reason, among others, the Supreme Court has held that a statutory standing question, which the Court may treat as one involving (or related to) a private right of action, may be decided before an Article III standing question.  See id.; Steel Co. 523 U.S. at 96-98, 117-20.  Whichever is decided first, however, the two inquiries are independent

of each other and a decision pertaining to one does not necessarily resolve a decision pertaining to the other.

There is yet another dimension to the standing requirement: the "prudential standing rule," which, although not the predominant focus of the standing doctrine, is a consideration that many courts make. See Lujan, 504 U.S. at 560 (determining that, although the concept of standing raises "prudential considerations that are part of judicial self-government, the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III").   The prudential standing rule is a rule that "normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." Warth v. Seldin, 422 U.S. 490, 491, 509 (1975). As such, prudential standing limitations, "unlike their constitutional counterparts, [] can be modified or abrogated by Congress." Bennett v. Spear, 520 U.S. 154, 162 (1997).  Thus, "Congress may grant an express right of action to a person who otherwise would be barred by prudential standing rules," but the same could not be said of Congress in relation to constitutional standing. Warth, 422 U.S. at 501.  In other words, Congress's intent to permit a private right of action under a statute, in effect, could trump a court's standing determination if made according to the prudential standing rule, whereas the reverse could not be said of constitutional

16

standing requirements.  As such, a standing determination made according to

prudential considerations would not affect the Court's determination on the

existence of a private right of action.

Some of the above cited cases appear to have employed a statutory

standing inquiry, see Ohio Legal Rights Serv., 365 F. Supp. 2d at 883-84, or a

mixture of constitutional, prudential, and statutory inquiries, Risinger, 117 F. Supp.

2d at 67, 69-70.  Although Defendants find those cases irrelevant to the issue at

hand, from the analyses employed, the Court could infer a finding of a private right

of action under the Developmental Disabilities Act.[2]  Even still, such cases are not

controlling and guide the Court only insofar as the statutory analyses employed

arguably would support a finding of a private right of action.  That finding,

however, is one of statutory construction for the Court to make here after a review

of the statutory language of the Act (and its legislative history, if necessary), the

supporting regulations, and any pertinent case law.  See Transamerica Mortgage

Advisors, Inc., 444 U.S. at 15 ("The question whether a statute creates a cause of

---

[2]      Although those cases refer to a related Act, PAMII, and/or the
predecessor Act to the Development Disabilities Act, that is, Developmentally
Disabled Assistance and Bill of Rights Act of 1975, 42 U.S.C. § 6001 et seq., those
cases are still applicable because the analyses under both would be similar to that
here.

action, either expressly or by implication, is basically a matter of statutory

construction.").

B. Private Right of Action

Plaintiff argues that it has an express private right of action under the

Development Disabilities Act or, at the very least, an implied private right of

action.  The Court need not reach the Cort four-factor test for an implied private

right of action because the plain language of the Act and its supporting regulations

suggest that Congress intended to grant P&A Systems a private right of action to

enforce the Act and to pursue remedies in federal court, among other forums.  The

State's implementing statute further lends support for the view that the State

interpreted the Act, and thus Congress's intent, as creating a private right of action

for P&A Systems to enforce provisions of the Act, as required by federal law.

The Developmental Disabilities Act provides for "allotments to

support a protection and advocacy system . . . in each State to protect the legal and

human rights of individuals with developmental disabilities[.]"  42 U.S.C. § 15041.

As a condition to receiving funds, the Act specifically provides that States "shall

have in effect" a system to protect and to advocate the rights of individuals with

developmental disabilities, thus making the creation of P&A Systems a mandatory

condition for funding with which a state must comply.  See 42 U.S.C.

18

§ 15043(a)(1).  That mandatory condition alone would not necessarily create an express private right of action to enforce the statute, but the remaining provisions create such a right.  To ensure such protection, the P&A System is given the express authority to "pursue legal, administrative, and other appropriate remedies" to guarantee protection of, and advocacy for, the rights of the developmentally disabled individuals within the State and to investigate incidents of abuse and neglect of such individuals.  See 42 U.S.C. §§ 15043(a)(2)(A)(i), (a)(2)(B).  The Act then declares:  such system "shall . . . have access at reasonable times to any individual with a developmental disability in a location in which services, supports, and other assistance are provided to such an individual" and to "have access to all records of" such individuals.  42 U.S.C. §§ 15043(a)(2)(H), (a)(2)(I); see also 24 C.F.R. § 1386.22(a) (providing that a P&A System "shall have access to the records of any of the following individuals with developmental disabilities").  Significantly, those sections do not limit legal remedies to those created or available under state law.  Cf. 42 U.S.C. § 15044(b)(1) (declining to limit a state system's remedies to bring suit against the state, an agency, or an instrumentality of the state on behalf of individuals with developmental disabilities).

The supporting regulations provide further ground for the view that P&A Systems have a private right of action under the Act.  24 C.F.R. § 1386.22(a)

19

sets forth: a P&A System "shall have access to the records of any of the following individuals with developmental disabilities[.]"[3]  45 C.F.R. § 1386.25 also provides that a P&A System, such as Plaintiff, may receive allotments for litigation costs that it incurs "in bringing lawsuits in <u>its own right</u> to redress incidents of abuse or neglect, discrimination and other rights violations impacting on individuals with developmental disabilities to obtain access to records and when it appears on behalf of named plaintiffs or a class of plaintiff for such purposes." (Emphasis added).  The phrase "in its own right" suggests that P&A Systems have an actual right to litigate incidents of abuse to seek redress.  <u>See</u>, <u>e.g.</u>, <u>Del Mar Avionics v. Quinton Instruments, Co.</u>, 645 F.2d 832, 835 (9th Cir. 1981) ("And the cause of action which a nonparty has vicariously asserted differs by definition from that which he subsequently seeks to litigate <u>in his own right</u>," citing <u>Montana v. United States</u>, 440 U.S. 147, 154 (1979)) (emphasis added).  45 C.F.R. § 1386.21(c) provides further proof that a P&A System's remedies are not intended to be limited.  A P&A System "shall not implement a policy or practice restricting the remedies which may be sought on the behalf of individuals with developmental disabilities or compromising the authority of the [P&A] System [] to pursue such

---

[3]      Although some of the regulations referenced herein note provisions of the predecessor Act, 42 U.S.C. § 6001 <u>et seq.</u>, there is no indication that the regulations since have been withdrawn.

remedies through litigation, legal action or other forms of advocacy." 45 C.F.R.

§ 1386.21(c).

In turn, to qualify for funds and to fulfill the mandatory conditions for

funding under the Developmental Disabilities Act, the State adopted Haw. Rev.

Stat. § 333F-8.5 to create a system of services to protect and to advocate for the

rights of developmentally disabled individuals to receive federal funds. See Haw.

Rev. Stat. § 333F-8.5(a) ("The purpose of this section is to comply with federal

law, which mandates the states to provide advocacy services to persons with

developmental disabilities and mental illness in order to receive federal funds")

(emphasis added). In turn, the Governor was granted the power to designate an

agency to carry out the purposes of the section, giving the agency access to "all

records of any person with developmental disabilities or mental illness, to the

extent required by federal law" and directing all departments and agencies of the

State to cooperate with the agency so designated. See Haw. Rev. Stat. §§ 333F-

8.5(a), (b), (c), and (d). Taking the pleadings as true, as the Court must for the

instant motion, the Governor designated Plaintiff as the State's P&A Agency to

enforce the provisions of the Act. That designation is not in dispute. In light of the

statutory language, as the State's P&A Agency, Plaintiff specifically was charged

with the responsibility to comply with federal law, including the responsibility to

carry out the conditions of compliance, such as pursuing legal remedies, 42 U.S.C.

§ 15043(a)(2)(A)(I), and "bringing lawsuits in its own right" when necessary.  45

C.F.R. § 1386.25.  The failure to do so may, in fact, result in the severance of

federal funds.

Defendants, nevertheless, do not argue that Plaintiff may not pursue a

legal remedy at all; rather, they argue that Plaintiff may not pursue one in federal

court, only in state court under the State's implementing statute.  The Court

disagrees.  Generally, Defendants believe that the language of the Act precludes a

private right of action in federal court.  The Court, however, finds no language in

the Act that limits the remedies that may be sought in either state or federal court;

in fact, there is language that suggests that remedies may not be limited.  See 45

C.F.R. § 1386.21(c) (providing that a state P&A System "shall not" restrict

remedies that may be sought or compromise such systems' authority "to pursue

such remedies through litigation, legal action or other forms of advocacy"); see

also 42 U.S.C. § 15044(b)(1) (referring to suits against a state, its agencies or its

instrumentalities).  Furthermore, although the express power authorized under the

Developmental Disabilities Act may be more comprehensive than that expressly

authorized under the State's implementing statute, the latter declares that the

State's P&A Agency "shall have access to all records of any person with

22

developmental disabilities or mental illness, <u>to the extent required by federal law</u>."

Haw. Rev. Stat § 333F-8.5(c).  Additionally, the State's P&A Agency "shall

provide those advocacy services to persons with developmental disabilities or

mental illness <u>as required by federal law</u>."  Haw. Rev. Stat § 333F-8.5(d).  That

language, when read in conjunction with that contained in the Developmental

Disabilities Act and the supporting regulations, indicates that Plaintiff has been

granted full authority to advocate for the covered persons through all means

permitted by federal law, including through lawsuits.[4]  Thus, the clear inference is

that, to comply with federal law, the State's P&A Agency may bring suit in federal

court.

Specifically, Defendants take issue with the Act as a funding statute,

providing examples of cases in which courts determined that federal funding

provisions did not provide individual persons with a basis for private enforcement

---

[4]      Furthermore, although the issue was not raised, there do not appear to
be any conflicts between the state and federal statutes, thereby creating any issues
involving preemption or the Supremacy Clause of the United States Constitution.
<u>See</u>, <u>e.g.</u>, <u>Wis. Coalition for Advocacy, Inc. v. Czaplewski et al.</u>, 131 F. Supp. 2d
1039, 1047-48 (E.D. Wisc. 2001) (finding, in a similar case, that even if a conflict
existed between the federal and state statutes at issue concerning the agency's
authority to access records, the federal statute would control); <u>Prot. & Advocacy
for Persons with Disabilities v. Mental Health & Addiction Servs.</u>, 448 F.3d 119,
129 (2nd Cir. 2006) (finding that to the extent that state law conflicted with the
related PAMII statute, PAMII governed).

in federal court.  See Gonzaga, 536 U.S. at 279; Alexander, 532 U.S. at 288-89.

The Court finds a significant difference between those cases and the instant case.

The instant case does not involve enforcement by private individuals; rather it

involves enforcement by an agency so designated to enforce the provisions of the

statute for the protection of those with developmental disabilities.   To illustrate, in

Gonzaga, the respondent, a former university student, argued that the statutory

regime underlying the Family Educational Rights and Privacy Act of 1974

("FERPA") conferred "upon any student enrolled at a covered school or institution

a federal right, enforceable in suits for damages under § 1983."  Gonzaga, 536 U.S.

at 279.  FERPA was enacted under Congress's "spending power to condition the

receipt of federal funds on certain requirements relating to the access and

disclosure of student educational records," granting the Secretary of Education the

authority to enforce the provisions.  See id. at 278-79.  In determining that the

respondent did not have a private right of action, the United States Supreme Court

acknowledged its line of precedent rejecting individually enforceable rights under

Spending Clause statutes, citing, among other cases, Pennhurst State Sch. &

Hospital v. Halderman, 451 U.S. 1 (1981) and Blessing v. Freestone, 520 U.S. 329

(1997), both of which Defendants cite in reliance.  See 536 U.S. at 281-82, 286,

289-90.  But, all of those cases are distinguishable in that they involve suits by

<u>private individuals</u>, not an agency specifically created under terms of a federal

statute to enforce the provisions of that federal statute.[5]

        That distinction is crucial because, although the Act does not

expressly indicate whether private <u>individuals</u>, that is, the developmentally

disabled, may enforce provisions of the Act, the statutory language specifically

indicates that P&A Systems not only 'may' but 'must' enforce the conditions in the

Act for receipt of federal funds.  Indeed, in <u>Gonzaga</u>, the Supreme Court

specifically found, as one reason for its decision, that "Congress expressly

authorized the Secretary of Education to 'deal with violations' of the Act."  536

U.S. at 289.  Here, Congress expressly authorized the P&A System to "deal with

violations" of the Developmental Disabilities Act.

---

[5]     During the hearing on the motion, Defendants emphasized the United States Supreme Court's recent decision in <u>Empire Healthcare Assurance, Inc. v. McVeigh</u>, __ U.S. __, 126 S. Ct. 2121 (2006), which presents much different circumstances than those present here.  In <u>Empire Healthcare</u>, a health insurance carrier for federal employees sought reimbursement of benefits in federal court under the Federal Employees Health Benefits Act (FEHBA) on the ground that an enrollee had recovered damages for his injuries in a state-court tort action.  <u>See id.</u> at 2126-27.  The Supreme Court found no federal right of action allowing insurance carriers to sue health-care beneficiaries in federal court for proceeds from a state court litigation because, among other reasons, the recovery sought typically was one that was resolved in state court and the FEHBA's preemption clause only displaced state law on issues relating to "coverage or benefits," not subrogation or reimbursement rights in general.  <u>See id.</u> at 2127, 2133, 2136.  The Court does not find that case persuasive in light of the facts and the circumstances of this case.

Still, Defendants would point to <u>Pennhurst</u> and its progeny to prove that the Developmental Disabilities Act does not create a private right of action. <u>Pennhurst</u> supports no such notion.  In <u>Pennhurst</u>, the United States Supreme Court dealt with the "bill of rights" provision of the predecessor to the Developmental Disabilities Act, that is, the Developmentally Disabled Assistance and Bill of Rights Act of 1975, 42 U.S.C. § 6001 <u>et seq.</u> ("Act").  451 U.S. at 5, 13.  An individual minor, who was a mentally retarded resident of the petitioner hospital, filed suit on behalf of herself and all other residents to enforce the "findings" in the bill of rights as they related to the unsanitary, inhumane, and dangerous living conditions in a hospital.[6]  <u>See</u> <u>id.</u> at 5-7.  The Supreme Court found that the findings in the bill of rights' provision, 42 U.S.C. § 6010, did not create new, substantive enforceable rights in favor of the mentally retarded to "appropriate treatment" in the "least restrictive" environment because, predominantly, funding was not conditioned on meeting those findings.  <u>See</u> <u>id.</u> at 14-27.  In other words, the findings did not create affirmative obligations to receive the funding.  <u>Id.</u> at 13 ("Noticeably absent from § 6010 is any language suggesting that § 6010 is a

---

[6]      Again, the circumstances in <u>Pennhurst</u> are much different than those presented in the instant case in that, here, individuals are not seeking to compel the State to enforce provisions of the Act, which the State has refused to enforce.  Quite the contrary, the State's P&A Agency seeks to enforce the provisions of the Act, according to the State's mandate, for the benefit of those covered by the Act.

26

'condition' for the receipt of federal funding under the Act.  Section 6010 thus

stands in sharp contrast to §§ 6005, 6009, 6011, and 6012.").

Because the Supreme Court concluded that the bill of rights conferred

no substantive rights on the mentally retarded, it did not need to reach the question

of whether it provided a private right of action.  <u>See id.</u> at 28 n. 21.  In fact, when

asked to determine whether the actual "conditions" that were contained within the

Act created a private right of action to enforce compliance, the Supreme Court

remanded the issues associated with that question to the Court of Appeals to give it

a chance to address them first.  <u>See id.</u> at 27-28.  Thus, the Supreme Court left open

the question of whether a private right of action existed for disabled individuals.

Setting aside, for now, that that case dealt with individual disabled persons,

contrary to the facts here, numerous courts since <u>Pennhurst</u> actually have decided

the issue of a private right of action in favor of disabled individuals, finding that

such rights exist for "persons" pursuant to the Act and § 1983.  <u>See, e.g., Martin v.

Voinovich</u>, 840 F. Supp. 1175, 1203 (S.D. Ohio 1993) (finding a private right of

action under Section 6023 of the predecessor Act, but not Section 6022(b)(4)(A),

enforceable through Section 1983); <u>Mihalcik v. Lensink</u>, 732 F. Supp. 299, 304 (D.

Conn. 1990) (determining that the individual plaintiffs had a private right of action

under the predecessor Act for deprivation of their substantive rights enforceable

through Section 1983); Gieseking v. Schafer, 672 F. Supp. 1249, 1261-62 (W.D. Mo. 1987) (finding a limited private right of action in the predecessor Act to compel the Secretary of Health and Human Services to perform his mandatory duties, which included limiting state funding where necessary, enforceable through Section 1983); Nicoletti v. Brown, 740 F. Supp. 1268, 1278 (N.D. Ohio 1987) (reviewing the "statutory language, the legislative history, and applying settled principles of statutory interpretation," the court found that mentally disabled individuals had a private right of action under the predecessor Act enforceable in federal court through Section 1983).  Cf. Va. Office of Prot. & Advocacy v. Reinhard, 405 F.3d 185, 190 (4th Cir. 2006) (determining that the Virginia state agency established to protect the rights of the mentally ill was not a "person" that could sue under Section 1983).

       That is not the end of Pennhurst's application, according to Defendants, as Defendants would further rely on that case to support the view that a private right of action only exists against an entity that voluntarily accepts funds and the conditions that accompany the funds.  The argument goes that Plaintiff cannot seek to enforce Section 15043 against Defendants because they are not the recipient of the funds allotted under the Act.  Defendants are misguided. According to Pennhurst, only the State must accept the funds to create such a

contract of compliance, not the entity against which the State seeks to enforce

provisions of the funding statute.  As the Supreme Court made clear,

> legislation enacted pursuant to the spending power is
> much in the nature of a contract: in return for federal
> funds, the States agree to comply with federally imposed
> conditions. The legitimacy of Congress' power to
> legislate under the spending power thus rests on whether
> the State voluntarily and knowingly accepts the terms of
> the 'contract.'

Pennhurst, 451 U.S. at 17 (emphasis added).  In other words, the contract is

between the State and the federal government, with an agreement by the State to

comply with the terms that the federal government has imposed in exchange for

receipt of funds.  The State not only must accept those terms, but it must agree to

comply with the conditions imposed, which, here, includes enforcement of the Act

against entities that are charged with violating the rights of the developmentally

disabled.  Under 42 U.S.C. § 15043, in exchange for funding, there is no dispute

that the State had to accept, and did accept, the terms of the "contract" voluntarily

and knowingly, which includes an affirmative duty to create a system of

compliance and enforcement without limitations on remedies that may be sought.

See, e.g., 42 U.S.C. §§ 15043(a)(1), (a)(2); 42 U.S.C. § 15044(b)(1); 45 C.F.R.

§ 1386.21(c); 45 C.F.R. § 1386.25.   In turn, the State created such a system, which

included the creation of a P&A Agency, that is, Plaintiff, to enforce the provisions

of the statute to the extent required by federal law.  See  Haw. Rev. Stat § 333F-

8.5(c), (d).  In fact, the failure to follow that specific mandate may result in

severance of the funds allotted to the State to protect the legal and human rights of

the developmentally disabled.[7]

---

[7]     During the motion's hearing, Plaintiff argued, in the alternative, that, even if Defendants had to accept funds from the State for it to enforce provisions of the Act against them, Defendants accepted such funds as a state recipient of Medicare and Medicaid Services.  As that was a new argument raised, both parties filed supplemental briefing on the matter.  According to that argument, the Court took judicial notice of Appendix J of a 'State's Operations Manual' ("Manual") that the United States Department of Health and Human Services for Medicare and Medicaid issued, supplementing portions of the manual already on record.  See Docket Nos. 47, 52.)  The Manual indicates that licensed Intermediate Care Facilities for Persons with Mental Retardation ("ICF-MR"), which includes Defendant ORI, must meet Health and Human Services ("HHS") regulations.  See Guideline § 483.410(c)(2) of the Manual (indicating that a facility must keep confidential information "consistent with the advocate's right of access, as required in the Developmental Disabilities Act"); 42 C.F.R. § 483.405; Docket Nos. 45 ¶¶ 3-4, 11).  In turn, HHS regulations include the regulations at issue here, such as 24 C.F.R. § 1386.22.  Accordingly, Plaintiff contends that, even if Defendants had to accept funds for provisions of the Act to be enforced against them, they did so through their acceptance of Medicare and Medicaid Services.  Defendants construed that argument as a contention that the Medicaid Act creates an implied right of action under the Developmental Disabilities Act, arguing that no such right exists and noting that, similar to the funds under the Developmental Disabilities Act, funds under the Medicaid Act flow to the State, not to Defendants.  The Court need not reach a determination on this new argument because it finds, in the first instance, that only the State is required to accept funds under the Developmental Disabilities Act to enforce the provisions of the Act against Defendants.

Indeed, a finding that Defendants had to receive funds from the federal government for the Act to be enforced against them actually would contravene the purpose of the Act.  That purpose is to provide allotments to the State in exchange for the State's compliance with the provisions of the statute to protect the legal and human rights of individuals with developmental disabilities. See 42 U.S.C. § 15041; see also  42 U.S.C. § 15001(a), (b) (delineating general findings by Congress concerning individuals with developmental disabilities and setting forth the purpose of the Act, including the creation of P&A Systems to protect the legal and human rights of the developmentally disabled).  Again, the Act's language contains no limitations on the rights of P&A Systems to enforce terms of the Act or restrictions on the entities against which the Act may be enforced for such alleged violations; for instance, the Act contains no language that it only may be enforced against entities that have accepted funds from the State for the developmentally disabled.   The Court will not infer limitations into the Act when such an inference would interfere with Congress's intent.  Thus, based on the language contained in the Act, the supporting regulations, and the pertinent case law, the Court finds an express private right of action in federal court pursuant to 42 U.S.C. § 15043 of the Developmental Disabilities Act.

Defendants still might contest jurisdiction in federal court, but, as Plaintiff has pointed out, it alleged federal jurisdiction for its claims brought pursuant to the Developmental Disabilities Act under 28 U.S.C. § 1331, which gives courts original jurisdiction over all civil actions arising under the laws of the United States.  Of course, as a "general federal-question jurisdiction statute[, it] is applicable only when the plaintiff sues under a federal statute that creates a right of action in federal court." Williams, 2007 WL 2458504, at *2; see also Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 808-09 (1986) (noting that most cases brought under the general federal-question jurisdiction "are those in which federal law creates the cause of action," though some may arise "where the vindication of a right under state law necessarily turned on some construction of federal law") (citation and internal quotation marks omitted).  As the Court has found that the Developmental Disabilities Act creates a private right of action in federal court, the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## CONCLUSION

For the reasons stated above, the Court DENIES Defendants' Motion to Dismiss.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 1, 2007.

_____
David Alan Ezra
United States District Judge

Hawai`i Disability Rights Center vs. Susanna F. Cheung, et al., Civil No. 06-00605 DAE-BMK; ORDER DENYING DEFENDANTS' MOTION TO DISMISS

33